IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEVI MARIA SCHMIDT, as Limited Guardian of JOHN CARRILLO,
an incapacitated person, KAREN CARRILLO,
JOHN CARRILLO, JR., and ASHLEY CARRILLO,

        Plaintiffs,

v.                                         CIV 18-0663 KBM/LF

ANTHONY SHIFFLETT,
NEW BERN TRANSPORT CORPORATION,
a foreign profit corporation,
PEPSICO, INC., a foreign profit corporation, and
ACE AMERICAN INSURANCE COMPANY,

        Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff's Opposed Motion for Sanctions for Defendants' Failure to Preserve Mobile Phone Data (*Doc. 47*), filed March 14, 2019. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 3, 6, 7.*

This case arises from a January 9, 2018 collision between Defendant Anthony Shifflett ("Defendant Shifflett") and Plaintiff John Carrillo. Plaintiff John Carrillo was installing striping on U.S. Highway 285, and Defendant Shifflett was driving a tractor trailer northbound on the same highway, when Defendant Shifflett's vehicle collided with Plaintiff John Carrillo, causing him to sustain severe injuries. Following the collision, Plaintiffs filed suit on June 5, 2018, in the First Judicial District Court of Santa Fe County, State of New Mexico, alleging negligence by Defendants. *Doc. 4*, Ex. A.

Plaintiffs now move for sanctions under Federal Rule of Civil Procedure 37(e), arguing that Defendants intentionally destroyed Defendant Shifflett's personal mobile device and failed to preserve the mobile phone data for the same device from the day of the collision. *Doc. 47* at 1.

I.  **Legal Standard**

"Spoliation is the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Martinez v. Salazar*, Civ. No. 14-0534 KG/WPL, 2017 WL 4271246, at *2 (D.N.M. Jan. 26, 2017) (quoting *Linnebur v. United Tel. Ass'n, Inc.*, No. 10-1379 RDR, 2012 WL 2370110, at *1 (D. Kan. June 21, 2012)). In order to prevent spoliation, litigants are under a duty to preserve evidence when they know, or should know, that it may be relevant to future litigation. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

Spoliation sanctions are proper when "(1) a party has a duty to preserve evidence because it knew or should have known[] that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). Further, Federal Rule of Civil Procedure 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice.

Fed. R. Civ. P. 37(e). An aggrieved party must demonstrate bad faith to warrant an adverse inference sanction. *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997).

Generally, upon reasonably anticipating litigation, a party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents" and other tangible evidence. *Browder v. City of Albuquerque*, No. CIV 13-0599 RB/KBM, 2016 WL 3397659, at *4 (D.N.M. May 9, 2016). Litigation holds are required for both tangible evidence and electronic data. *See Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620, 637 (D. Colo. 2007) (imposing spoliation sanctions for destruction of electronic media).

## II. Background

On January 9, 2018, Plaintiff John Carrillo was installing striping along northbound U.S. Highway 285, outside the City of Artesia in Eddy County, New Mexico. At the same time, Defendant Shifflett was driving a tractor trailer on behalf of Defendant New Bern, and allegedly Defendant PepsiCo,[1] northbound on the same highway. A mounted attenuator trailer was positioned behind Plaintiff John Carrillo's work truck, and he was working nearby on the passenger side of his vehicle. Defendant Shifflett collided into the rear of the mounted attenuator trailer and work truck which then struck Plaintiff John Carrillo causing serious injuries to him.

---

[1] Although Plaintiffs assert that Defendant Shifflett was driving on behalf of both corporate defendants, Defendant PepsiCo maintains that it "does not own, maintain or utilize commercial transportation vehicles such as tractor-trailers." *Doc. 56* at 2 n.1. The alleged agency relationship between Defendant PepsiCo and Defendant Shifflett is addressed by the parties in their briefing of the Motion for Summary Judgment on Behalf of PepsiCo, Inc. *See Docs 98*; *107*; *114*; *134*. It is unnecessary for the Court to resolve this issue for purposes of the present motion.

Defendant Shifflett reported that, just prior to the collision, he was distracted by the instrument gauges in his tractor, which he claims were malfunctioning. In his written statement, he explained:

> My truck was sounding weird so I reduced my speed and starting [sic] checking my gauges. I seen trucks in front of me, but didn't see any warning lights. I look down again to check my gauges, and when I look up I realized I was about to make impact with another veh[icle].

*Doc. 47*, Ex. 1, at 1. Similarly, Defendant Shifflett testified during his deposition: "I looked down at my gauges and then I looked up. I seen a truck in front of me roughly 100 yards, and I looked down at my gauges again and then when I looked up again it was impact." *Doc. 47*, Ex. 2 at 138:1-5.

It is undisputed that Defendant Shifflett denied using his personal or business cellphone at the time of the accident. Chris Gonzales, Associate Manager of Bottling Group, LLC, testified that he did not ask Defendant Shifflett to turn over his personal cell phone following the collision, explaining: "That's where I decided not to go to try and request a personal device. Asked him and hoped that he was going to be full, fair and transparent." *Doc. 47*, Ex. 3, at 114:17-19. Defendant New Bern did, however, terminate Defendant Shifflett's employment on January 19, 2018. *Doc. 56*, Ex. 2.

On March 2, 2018, Plaintiffs' counsel issued a "Notice of Representation [and] Notice of Preservation/Spoliation" to Pepsi – Cola Co.'s Risk Manager and the Ace American Insurance Company's Claims Department. *Doc. 47*, Ex. 7. The letter indicated that counsel was representing Plaintiff John Carrillo and demanded that the recipients preserve certain enumerated items for the "past 3 years." *Id*. at 1. "Data from tele-communications system" and "Driver's personal and business cell phone record" were

4

among the 62 items for which preservation was demanded. *Id.* at 1-2. Plaintiffs later filed suit against Defendants in State Court on June 5, 2018. *Doc. 4*, Ex. A.

Following the commencement of litigation, the parties engaged in formal discovery. In his responses to Plaintiffs' First Set of Interrogatories, Defendant Shifflett stated that he was in possession of two mobile phones on the day of the collision, his personal cell phone, (757-358-2671), and a cell phone issued by Defendant New Bern. *Doc. 47*, Ex. 8, at 2. He asserted that his personal cell phone, however, remained "in a bag in the cab of the tractor" at the time of the collision, while the phone issued by Defendant New Bern was "in the cab of the tractor." *Id.* Later, in his responses to Plaintiffs' Supplemental Interrogatories, Defendant Shifflett admitted that he was no longer in possession or control of the personal cell phone that he used at the time of the collision. He explained that "to the best of [his] recollection, the phone was discarded sometime during July and/or August 2018 as a byproduct of the process of moving across the country back to Virginia and/or the packing and unpacking process." *Doc. 47*, Ex. 9, at 2. According to Defendant Shifflett, he discarded the phone because he "was not pleased with the quality of service from T-Mobile." *Id.* at 2.

Additionally, Defendants did not produce Defendant Shifflett's phone records for his personal phone for the day of the collision. Instead, Plaintiffs obtained them directly from T-Mobile Wireless. *Doc. 47*, Ex. 5. In their First Supplemental Requests for Admissions, Plaintiffs asked Defendant Shifflett to admit that the records they had obtained were, in fact, his personal phone records from the relevant period. *Doc. 47*, Ex. 13, at 2. Defendant Shifflett responded that "[s]ubject to and without waiving [his]

5

objection, . . . the records appear to be T-Mobile records" for the personal cell phone he owned at the time of the collision. *Id.*

Plaintiffs retained Ben Levitan as their cell phone expert in this case. In Mr. Levitan's Preliminary Report, which is attached to Plaintiffs' Motion, Mr. Levitan opined that Defendant Shifflett's cell phone records and other material sent to him by Plaintiffs' counsel "show, with scientific certainty, that Mr. Shifflett was highly distracted at the time of the accident and this impairment caused by his cell phone use was a substantial cause of the crash." *Doc. 47*, Ex. 14, at ¶ 12. According to Mr. Levitan, Defendant was actively on a voice call on his personal cell phone with Familia Dental when the accident took occurred. *Id.* at ¶ 13. Moreover, based upon a review of Defendant Shifflett's cell phone records and driver's log, Mr. Levitan observed that Defendant "Shifflett routinely [drove] while using his personal phone." *Id.* at ¶ 25.

## III.  Analysis

As a preliminary matter, Plaintiffs insist that Defendants' Response to their Motion for Sanctions was untimely, having been due April 1, 2019, but filed April 12, 2019. *Doc. 62* at 2. While the Court does not condone the lateness of Defendants' filing, and indeed cautions Defendants that they should more closely follow the deadlines set out in D.N.M.LR-Civ. 7.4(a), it favors a determination on the merits of Plaintiffs' Motion for Sanctions. Defendants response, albeit untimely, aids the Court in a full consideration of the issues in Plaintiffs' motion and will not be stricken.

In their Motion for Sanctions, Plaintiffs ask the Court to sanction Defendants for "intentionally destroying Defendant . . . Shifflett's . . . mobile phone device, and for their failure to preserve the mobile phone data of Shifflett's personal cell phone from the day

6

of the collision in this case." *Doc. 47* at 1. Plaintiffs explain that Defendant Shifflett discarded his cell phone in July or August of 2018, even after Plaintiffs provided Defendants with a preservation letter on March 2, 2018 and initiated formal litigation in State Court on June 5, 2018. They maintain that Defendants thereby engaged in overt acts to knowingly destroy critical evidence in bad faith. Further, they contend that Defendant New Bern and Defendant PepsiCo failed to take any independent actions to preserve the mobile phone data or to adopt a policy to manage data regarding personal cell phone usage. They request, as sanctions, an adverse inference instruction, an order allowing the introduction of evidence of willful spoliation, an order allowing the introduction of Shifflett's person mobile phone records, an order precluding Defendants from questioning the veracity of T-Mobile's records, an order precluding evidence regarding faulty gauges, and an order precluding arguments by Defendants as to comparative fault. *Doc. 47* at 11-12. In response, Defendants insist that they properly complied with Plaintiffs' March 2, 2018 preservation letter and that the spoliation factors cannot be met, nor can prejudice be shown. *Doc. 56*.

As the Court explained in *Zubulake v. UBS Warburg LLC*, "identifying the boundaries of the duty to preserve involves two related inquiries: *when* does the duty to preserve attach, and *what* evidence must be preserved?" 220 F.R.D. at 216. Plaintiffs' motion, first, takes up the issue of *when* Defendants' duty to preserve arose.

Generally, the filing of a lawsuit generally triggers the duty to preserve evidence. *Cache La Poudre Feeds, LLC* at 621. Sometimes, however, the obligation arises earlier. Here, Plaintiffs maintain that such a duty arose the moment Defendants became aware of the collision between Plaintiff John Carrillo and Defendant Shifflett, on January 9,

7

2018. *Doc. 47* at 6. In support of this proposition, they refer the Court to *Browder v. City of Albuquerque*. In *Browder*, a discovery dispute arose over video footage from intersections near the site of a fatal collision. Although the footage was initially available for viewing by officials from the City of Albuquerque, it was later lost and unavailable to the plaintiffs. *Browder v. City of Albuquerque*, 209 F. Supp. 3d 1236, 1240 (D.N.M. 2016). The plaintiffs moved to sanction the defendants for spoliation, and Judge Brack of this District concluded that a duty to preserve relevant evidence arose the moment the City became aware that one of its police officers was involved in a fatal traffic accident. *Id.* at 1244.

The Court agrees that a similar finding may be warranted here. That is, just as litigation was reasonably foreseeable to the City in *Browder* when it learned that one of its officers was involved in a fatal traffic accident, litigation was arguably foreseeable here when Defendants learned that Defendant Shifflett's tractor-trailer had rear-ended a stationary or slow-moving vehicle installing striping along the highway and seriously injured Plaintiff John Carrillo. This is especially true given Defendant Shifflett reports to his employers that he was looking away from the road immediately before impact. But, even if the accident itself did not place Defendants on notice that litigation was likely, Mr. Chavez's March 2, 2018 preservation letter certainly did. Yet, Defendant Shifflett testified that he disposed of the subject cell phone four or five months later in July or August of 2018, *after* the preservation letter and even *after* the June 2018 commencement of this action. In short, the cell phone was discarded *after* a duty to preserve evidence arose.

Defendants focus their arguments on the *second* prong of the preservation inquiry, the scope of their duty, maintaining that they were under no duty to preserve Defendant Shifflett's personal cell phone. Defendants note that although Plaintiffs itemized 62 items for preservation in their March 2, 2018 letter, Defendant Shifflett's cell phone was not among them. *Doc. 56* at 3. While Mr. Chavez's letter enumerates "Driver's personal and business cell phone records" as items to be preserved, he does not specifically request preservation of any cell phones. *Doc. 47*, Ex. 7. As such, Defendants insist that they have complied with Plaintiffs' Preservation Notice, as "Plaintiffs possess driver's personal and cell phone records and data from telecommunication system[s]." *Doc. 56* at 3.

Common sense dictates that Mr. Chavez's omission of cell phones from the preservation letter, while at the same time identifying so many other potentially relevant items for preservation, diminishes the culpability of Defendants with respect to the discarded cell phone. Indeed, absent some knowledge by Defendants that there was relevant evidence contained on the cell phone itself, neither its disposal nor the failure to advise against its disposal would seem to warrant sanctions. In other words, Defendants' duty to preserve Defendant Shifflett's personal cell phone turns, at least in part, on what the respective defendants knew about its relevance to the instant litigation. Such an inquiry overlaps with the culpability analysis that the Court must undertake in assessing the appropriateness of spoliation sanctions.

Under the spoliation analysis, the "two most important factors" are: (1) the culpability of the offending party, and (2) the actual prejudice to the other party. *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1297 (D.N.M. 2016). With respect to the

9

first factor, Plaintiffs allege that Defendants are culpable because they engaged in "overt acts to knowingly destroy and dispose of critical evidence to a crucial fact at issue in this case in bad faith." *Doc. 47* at 7. The Court finds this allegation overstated, particularly when it comes to Defendants New Bern and PepsiCo. After all, Plaintiffs do not identify any actions to destroy or discard Defendant Shifflett's phone taken by Defendants New Bern or Defendant PepsiCo. Nor is the Court persuaded, under the circumstances, that the failure of these defendants to collect his personal cell phone somehow equates to a bad faith action to destroy it.

Plaintiffs have not demonstrated that Defendant New Bern or Defendant PepsiCo were aware of any specific relevance of the cell phone that was not redundant of the cell phone records that Plaintiffs had already obtained from T-Mobile. Once again, Plaintiffs did not specifically request preservation of Defendant Shifflett's personal cell phone, though they requested preservation of many other items of potential relevance. And Defendant Shifflett had reported to his employers that he was distracted by his gauges at the time of the collision, not by his personal cell phone, which he claimed was in a bag in the cab of the tractor.

Further, Defendants emphasize that Defendant Shifflett was no longer employed by Defendant New Bern after January 19, 2018. *Doc. 56* at 2. Even assuming, without deciding, that Defendant New Bern or Defendant PepsiCo had an obligation to advise a former employee concerning the retention of his personal cell phone, the sanctions that Plaintiffs seek against these defendants are simply not appropriate under the facts of this case. That is, the Court is not inclined to penalize a party for failing to prevent a former employee from discarding a personal cell phone when that phone was omitted

10

from the opposing party's comprehensive preservation request. This case is distinguishable from *Browder*, where Judge Brack determined that the City's irresponsible evidence retention practices actually *caused* the loss of critical evidence requested by the opposing party. *Browder*, 209 F. Supp. 3d 1236, 1246 (D.N.M. 2016) (concluding that the City's "lack of a retention policy and irresponsible [evidence] retention practices [were] responsible for the loss of significant evidence").

On the other hand, Plaintiffs *have* proffered some evidence bearing on Defendant Shifflett's culpability in discarding his personal cell phone. More specifically, they offer for the Court's consideration expert opinion testimony from Mr. Levitan, suggesting that Defendant Shifflett was on a voice call with a dentist office at the time of the collision. This testimony, if believed, does two things. First, it increases the likelihood that Defendant Shifflett was culpable in discarding his cell phone. For if Mr. Levitan's opinion is to be relied upon, Defendant Shifflett testified untruthfully when he testified that he was not on the phone at the time of the crash, as it is unlikely that he would have simply forgotten that he was on a personal phone call at the time of the collision.

As both parties acknowledge, spoliation "occurs along a continuum of fault— ranging from innocence through the degrees of negligence to intentionality[, and] resulting penalties vary correspondingly." *See Welsh v. United States*, 844 F.2d 1238, 1246 (6th Cir. 1988), *overruled on other grounds by Adkins v. Wolever,* 554 F.3d 650 (6th Cir. 2009). Here, Defendants maintain that Defendant Shifflett's disposal of his cell phone was at most negligent. *Doc. 56* at 4. Critically, though, Mr. Levitan's opinion at least suggests that Defendant Shifflett may have discarded his cell phone despite

knowing that it contained inculpatory evidence concerning his phone usage at the time of the collision. That, in turn, would tend to show that his actions in discarding the phone were culpable if not intentional. But even if Plaintiffs cannot fully establish the requisite "bad faith" required for the imposition of an adverse inference, lesser sanctions may still be warranted. *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008). Pursuant to Federal Rule of Civil Procedure 37(e) when a party fails to take "reasonable steps to preserve" evidence that "should have been preserved" in the anticipation or conduct of litigation, a court must impose the sanctions necessary to cure any resulting prejudice. Fed. R. Civ. P. 37(e).

But Plaintiffs must establish prejudice. Mr. Levitan's opinion about Defendant Shifflett's voice call increases the likelihood of culpability by Defendant Shifflett in discarding his phone, but they, at the same time, minimize any prejudice to Plaintiffs in the loss of that phone. If Mr. Levitan can, as he submits, testify with "scientific certainty" that Defendant Shifflett was on the phone at or around the time of the crash, the loss of the cell phone itself cannot be described as devastating to Plaintiff's case. In other words, Mr. Levitan's opinions suggest culpability by Defendant Shifflett but they also undermine Plaintiffs' claims of prejudice. Indeed, when asked at his deposition whether access to Defendant Shifflett's personal cell phone would have allowed him to give testimony with great certainty, Mr. Levitan responded: "What I have said is 100 percent accurate. Any additional information such as additional Geotab information, forensic of the phone is only going to enhance my opinion. *Doc. 56*, Ex. 4, at 29:18-23.

Plaintiffs also complain that Defendants failed to preserve or produce Defendant Shifflett's personal mobile phone records. *Doc. 47* at 9. Notably, however, Plaintiffs' do

not contend that the failure to preserve these cell phone records has prejudiced them; nor could they, as they now have those records in their possession.

Ultimately, considering the two most important spoliation factors of culpability and prejudice, the Court declines to impose the most severe sanctions requested by Plaintiffs for Defendant Shifflett's spoliation of his personal cell phone (i.e. preventing any argument as to comparative fault or giving an adverse inference instruction). Although the opinions of Mr. Levitan would suggest some culpability by Defendant Shifflett in discarding the phone, the Court is not convinced that Plaintiffs have suffered severe prejudice. According to Mr. Levitan, a forensic evaluation of the phone may have bolstered his opinion, but he remains able to confidently opine about Defendant Shifflett's use of his phone even without inspecting the phone itself. Balancing the spoliation considerations, the Court will allow Plaintiffs to introduce evidence of Defendant Shifflett's purported willful spoliation of his personal cell phone and will also allow Plaintiffs to introduce Defendant Shifflett's personal cell phone records from T-Mobile. The Court reserves for ruling for trial as to whether an adverse inference instruction is warranted as to Defendant Shifflett.

**IT IS HEREBY ORDERED** that Plaintiff's Opposed Motion for Sanctions for Defendants' Failure to Preserve Mobile Phone Data (*Doc. 47*) is **granted in part**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent